Good morning. I'm here to start a complaint with Estrada v. Kaiser Foundation Hospitals. Good morning, Your Honors. May it please the Court, I'm Charles Seavey for the Appellant. The complaint is of 75,000 Kaiser employees who filed a relatively simple case in the California courts, alleging that the manner in which Kaiser diverted $0.09 per hour from their wages, as well as the fact that Kaiser failed to disclose this diversion in any way on their wage statements, violated California laws. And doesn't everything turn on understanding the state law? What does the state law mean by agreed-upon wages? Yes. What does the state law mean by agreed-upon wages? How do we know? Well, I would say that the idea that, first of all, that the state law inquiry has to do specifically with the phrase agreed-upon wages is a semantic trick that defendants are playing here. There are three different key statutes at play here, Section 222, Section 224, and Section 226. And Section 222 is a basic breach of contract section. It states that it shall be illegal, it was written in 1937, it states it shall be illegal to withhold any portion of the wage agreed upon. But that's, but we know that, in fact, you can deduct various things, which is 24, 26, right? And, yeah, so the deductions are, the allowable deductions are specifically listed in 224. And those have been interpreted in the common law as being limited, deductions are limited to those specific circumstances. In other words, deductions for insurance or for retirement benefits and which are specifically agreed to in writing by each employee. From the employer's point of view, it doesn't matter whether you, if they're interested in the bottom line as what they're paying per hour per employee, whether it's wages or risk wages, they're pretty much indifferent to. It would show up in a W-2. Do you have any idea what the W-2 in these, what tax forms show up here? I mean, that would be almost just positive, wouldn't it? Whether it shows up on a W-2 as wages or not. I am not completely sure. I would assume that what shows up in the local wage scales, it shows up on the W-2s. Right, so it's not wages. The 9 cents is not wages. Your Honor, that's- I'm not going to have to interpret anything to know that. Well, Your Honor, that's for, I mean, you would have to look at all the other California cases that have dealt with this issue. In those cases as well, it didn't show up in the W-2. I mean, that's the, and yet the California courts- That's why I say it's a state law issue ultimately. Right. I.e., which nobody's briefed here. I mean, nobody's really told us exactly what, it isn't really, once you know what the state law is, then you can figure out whether there's anything hard about looking at the collective bargaining agreement for the answer. If you just, if you know what the state law is, you can either look at the local agreements account of what it is, or you can look at the W-2, or you can look at maybe the national agreement, I gather, and the amount is in there really as a baseline for calculating increases. But if we knew the state law, we'd know the answer, right? Yes. So you don't have to interpret the contract. Exactly. That's exactly, I mean, the entire game that they've been playing, in which the district court adopted, was simply to, they've been trying to re-characterize these inquiries under state law. The question under state law is, you have gross wages, you have deductions, you have net wage, okay? And the state law inquiry is to say, okay, we have these different wage terms. How do we, in the state of California, label these contractual terms? The contractual terms themselves are completely fixed and undisputed. Now, there's been many, many cases. Their meaning is substantive. Their meaning is absolutely clear. Their substantive meaning is absolutely clear. The only thing that is unclear is how California looks at them under this particular statutory scheme. It's not clear. So in other words, Wisconsin can have a statutory scheme that looks at these same fixed terms in its way. Oregon can have a, can call a deduction of what you might call it. They can call it whatever they might want to call it. What California wants to call these terms, how it labels these terms, the California inquiry looking at these terms, doesn't change the fact that the terms themselves are fixed. They're substantively fixed. Going all the way back to Lucas Flower and LUEC, the purpose of Section 301 preemption is to ensure the interpretive uniformity of the substantive terms of the collective bargaining agreement as agreed between the parties at the day of contracting. So in other words, when the union representative and when the employer shake hands, they look each other in the eye and they say, okay, we're going to pay the employees this much for doing these duties for these hours. They're going to get these sort of retirement benefits, et cetera, et cetera. Those are the terms. Those are the substantive terms agreed on on that day. They're not agreeing on how contract terms will be labeled under different states' laws or anything like that. They're simply agreeing to those substantive terms. Now, those substantive terms are ensured to be enforced uniformly throughout the 50 states. That's the purpose of this doctrine. Do you agree that the agreed upon wage is contained in the negotiated wage rates chart in the local agreements? Okay. Yes. Do you agree with that? There's two. The plain English, were the local agreements agreed upon? Of course they were agreed upon, right? But agreed upon wage is a statutory term that occurs in 222, which is synonymous with gross wages. If you read 224 and 226, you'll see that there's various different statutory terms. So is that yes? Do you agree to that? Do I agree to it? No, my question is, okay, I would ask. Let me ask the question because I'm trying to follow your complaint here. Paragraph 30 of your complaint states the agreed upon wage terms of the 2005, 2010, and 2012 national agreements are stated in Section 2A1 of each agreement as across-the-board wage increases of a specific percentage. Do you stand by that proposition? Absolutely. In terms of the statutory meaning, yes. Then how can we resolve the dispute over whether this agreed upon wage is contained in Section 2A1 of the national agreement like you proposed in the negotiated wage chart in the local agreement? It seems like it's a question for a California court where which one was the agreed upon wage, the statutory term agreed upon wage as it appears in 222, which is synonymous with gross wage. Is the gross wage the 3% across-the-board increase or is the gross wage the wage scales? We disagree on that. The resolution of that dispute is a question of California law. Well, do you have to interpret the CBA? No, not at all. You just said that they have to have the California court interpret it. A California court interprets it according to California law and according to the surrounding factual circumstances. What was the accounting? What were the communications to the employees? In your brief, you also state that you have always fully agreed with the statement that the collective bargaining agreements in question consist of both the national agreement and the local agreement. Your complaint alleges that the national agreement superseded any local collective bargaining agreements and are binding on local unions except for when local agreements provide superior wages or benefits. So are you basically amending your complaint in the appellate briefing? I'm trying to figure out what's going on. Are the allegations that the national agreement supersedes and is binding in your complaint incorrect? That is a precise quote from the national agreement itself. All I'm doing there is quoting what the national agreement. The national agreement uses the word supersedes. Yeah, but then you are creating a collective bargaining agreement issue, it seems to me, maybe about if your argument is that, well, there are these two different wages listed, but the national agreement wins, then somebody does have to interpret the agreement. But I'm not alleging that the national agreement states that. It states it supersedes.  It seems to me that you have the North California Statute Agreement lists wage rates. Those, I understand, do not have the nine cents in it. The wages that are reported in there don't have the nine cents in them, right? And the ones in the national agreement, as I understand it, don't have the nine cents in it, only with regard to how you calculate increases, but not the bottom line. What happens is the national agreement provides for 3% across-board wage increases. Right. And that's in one of the sections that's subject to arbitration. That intersection is not subject to arbitration. In one sentence in a section talking about the Labor-Management Partnership Trust in sort of exalted terms, there's one sentence which mentions the nine cents per hour contribution. Then, without any disclosure anywhere else ever, the wage scales are the net of the 3% across-board increase minus the nine cents per hour. The wage scales in the- In the local agreement. Right. So the whole point is to minimize and essentially conceal the nine cents per hour deduction, okay? Because the nine cents per hour reduction doesn't appear anywhere except for that one sentence. It doesn't appear on their wage statements. It's not clearly set out in the local agreements. It's not set out in the sections' wages and benefits. So you're talking yourself into the fact that someone has to figure all this out by looking into collective bargaining agreements. No, they don't need to look at it by- They can look at the accounting, okay? They can look at all the facts. I mean, in the supplemental briefing, I talked about all the facts which show that this was clearly treated as a deduction. It was clearly treated as a- For example, when three bargaining units- But one of your answers when I asked you about the W-2, I understood it to be that for taxable wages, they're not reporting the nine cents. And that's the entire point. But they're not really wages. They are really wages. In other words, when you report- My understanding is that when there are other deductions, like if you want to shake your head, that's fine, but- No, no, no. I'm saying the wages in California are the amount offered or promised. Okay, W-2 doesn't determine wages in California law. Wages in California are the amount offered or promised. You can look at pregnancy and so on. You can look at all of these California cases. California has had a problem with this back to the Great Depression. They've had a problem with this issue of CURS catering, Quillian, et cetera, et cetera. Employers have been using the device of deduction to manipulate and conceal-essentially steal from employees for time immemorial. And in the Great Depression, this became a great problem. Therefore, in 1937 and 1942, California passed Sections 222, 224, and 226, strictly limiting the use of deduction and requiring, through Section 226, the clear disclosure and transparent disclosure to employees what is happening to their wages, listing all deductions. Okay? So California is very sensitive about this issue. What Kaiser is doing here is they're revisiting a sort of misconduct on the part of employers that hasn't the noble employer has attempted for quite some time, frankly. And we are calling out on it. Thank you for your time. So we'll continue. Thank you for coming. Thank you. Thank you for coming. Thanks for having us. Good morning, and may it please the Court. I'm Michael Lindsay, and I'm here on behalf of Kaiser Defendants. I think the starting point here is, was this case properly removed to this Court? And the complaint contains very specific and lengthy investigations about what the contract provides, what the national agreement provides, and what the wage calculations were under the national agreement. In other words, this complaint violates it. I'm looking at the national agreement, and we have the provision that says the compensation across the board wage increases as percentages. How do we know what they're using as the base? We don't. That's why it was necessary to review the national agreement together with the local agreement. Why is it necessary to review the national agreement? Together, because to get to the interpretation that plaintiffs want to advance here, they have to create a wage scale different from those published in the local agreement. All right. But the question is whether the case can be resolved without interpreting the collective armament agreement. And if the state law, excuse me, okay, you both like to shake your heads. Yeah, that's okay. If the state law would make clear that the wage agreed upon is the wage that is listed as the wage in the collective argument agreement, i.e., what's in the local agreement, then you don't have to interpret anything. I think that's correct. I would agree that if the wage is said, the wage is agreed upon, which is a language out of 222, which actually predates the Labor Management Relations Act, which is the second word section 301 comes from, that says that the wage is agreed upon in the collective bargaining agreement must be paid without deduction. The question then becomes, what are those wages? And in this case. But that's a state law question. No, it's not a state law question. Why? Because collective bargaining agreements set the wages, hours, and working conditions. In this specific case, there is a clear dispute as to what the wages are under the collective bargaining agreement. And if we knew, for example, that the state law was that the wages agreed upon are the wages reported on, and treated for tax purposes as wages paid, then we would know that that was, I mean, that would be one possibility. Or if we knew that it is the dollar amount reported to the employees as their wages, which is, in this instance, what's in the local agreement, then that would be the answer. We wouldn't have to control anything. But here the argument is that the $0.09 per hour contribution is a deduction from a wage scale that has not been presented and is not available for review independently. And if we knew that doesn't work under state law, then you wouldn't have to interpret anything. I'm not sure that's correct. Because if the parties have agreed to, the statute says agreed upon wage. If the union and the employer have agreed upon a wage, set it forth as an attachment to the local agreements, how they got there doesn't require interpretation. But where the argument is, as it is here, that how they got there was to conceal an illegal deduction. But why isn't the answer they lose under state law because state law doesn't allow it? Because it requires an interpretation of the collective bargaining agreement. But they lose because they're writing state law wrong. Because it's not limited to state law. The issue here is what are the wages set under the collective bargaining agreement? What were the wages agreed upon? Now, I will carefully concede that in the vast majority of cases, simple reference to the wage table resolves the issue. Simple reference to some third-party source resolves the issue. That's not what was alleged in the complaint. What was alleged in the complaint was that the national agreement contained a provision that created a different wage scale than that that was set forth in the attachment to the local agreements. And that there were really two separate wage tables. The counsel themselves in a few minutes could have said, it's for the state courts to interpret the agreements to arrive at the conclusion. I mean, it's just more satisfying to me to get to the question of what the state law actually is than to leave it up in the sky and say that federal law is preempting something that just may not matter at all. But federal law preempts where there are. Well, either way, right? Of course. Federal law preempts where the claim under state law is substantial. Even if state law might, in fact, be what you say it is and what I'm saying it might be, that doesn't matter because what matters is what they're alleging. And what they're alleging requires you to interpret the agreement. The question is who decides what a collective bargaining agreement means. Number one, it should be an arbitrator. And failing arbitration, it then becomes a federal court question under Section 301, either as a breach of contract claim or as a breach of the duty of fair trial. But it doesn't as easily defend as a case to say they're just wrong about state law and, therefore, we win. I'm not sure that I can do that without an interpretation. Well, that's what I'm trying to get to. Why? Because the interpretation here is substantial. The case analysis is substantial. But this is what they allege, but your defense is they have it wrong. It's not state law. No. The issue is whether or not their claim is substantially dependent on an interpretation of a collective bargaining agreement. Right. But if their claim is legally incorrect under state law, because that's not what wage-agreed-upon means under state law, then you can win without ever interpreting a collective bargaining agreement. But their complaint alleges an interpretation of the claim. I mean, that's the question. So the question is why are we looking at the complaint first rather than the question of whether you ever ‑‑ whether they're just legally wrong about state law? Because the issue before this court is a jurisdictional one, whether or not this case was properly removed to the federal district court. We are here on a motion to repeal an appeal of a denial of a motion to remand. Following the denial, the district court granted leave to amend to address the very issues I think that your Honor is raising. Plaintiff's declined the opportunity for leave to amend and instead opted to appeal the remand issue solely to this court. But I guess you're right that the removal question is based on the complaint. And the complaint creates the question. Okay. So that might give you jurisdiction. But can you still simply defend on the basis of state law and never get to the agreement on the appeal? Do you think that's jurisdiction? I think we ‑‑ no, I don't think so. Because I think here plaintiff's claims are that the national agreement says one wage scale, the state, the local agreement says a different wage scale. So somebody's going to have to interpret that contract to determine which is right. You argue that the wages agreed upon are located in the negotiated wage chart in the local agreement. That's correct. All right. So if that's true, would the court simply need to look to the chart to discover the wages agreed upon? Absolutely. But, and the but here is given the status of this complaint, I mean, from a jurisdictional standpoint, as a general rule, 301 preemption does not apply if you merely have to refer to a collective bargaining agreement. Here you are going to actually have to analyze it in light of what is raised in the complaint. Well, because then to determine if there was a violation of Section 222, the court may need to determine if you were deducting the nine cents per hour from the agreed upon wage. And it seems like, or I understand that you argue that the Section 222 claim would necessarily, I guess, fail at that point. Is that what you're saying? I think the 222 claim is preempted at that point. Once you have to do an analysis of the collective bargaining agreement to arrive at the agreed upon wage, you are now in an area where the claim is substantially dependent. This is the word out of Cobalt, the word out of Burnside, on an analysis of the collective bargaining agreement. If it's substantially dependent, then 301 preempts the state law on this issue. And so not only may I win the claim on the merits, but the claim itself goes away. And the complete preemption doctrine turns it into a 301 lawsuit for some sort of breach of contract, which is going to require an interpretation of that agreement in a kind of classic contract sense. And that's really kind of the heart of it is that we are here on the jurisdictional issue as to whether or not the complaint as filed and as removed was preempted by Secretary Washington. I have a question. Is whether that governs the way the case proceeds? I think it does. Is the fact that there's jurisdiction, because that's how they've alleged it, mean that it has to, that the case, that the claim then goes away versus it's resolved on state, state law grounds without actually interpreting the agreement? I don't think so. I think that, and my time is up, but I'll answer the court's question. I think that when a case is removed and jurisdiction under 301 is found, 301 transforms the state law claims into 301 claims. I mean, that's kind of the fundamental concept of the case. It could be a complaint. It's just fundamentally incorrect. It says state law is A, and state law is really B. That doesn't make sense, does it? But the question is, I agree with the hypothetical that if the complaint doesn't make sense, it doesn't make sense, but where the complaint requires. And then federal jurisdiction. If the complaint requires interpretation of the collective bargaining agreement to learn that it doesn't make sense, that's where 301 doesn't make sense. That's what you're saying isn't necessarily true. That, in fact, there may be a very clear answer under state law, and that doesn't require interpreting the collective bargaining agreement. It's very interesting. Anyway, thank you. Thank you. One thing that's gone unsaid here is that there's no question that the 226 claims survive preemption. I mean, those are based on the contents of the wage statements. Those have nothing to do.  It's the same thing still as I understand it. If this is due to deduction from agreed upon wages, it doesn't have to be in the wage statement. No, that's not. I mean, 226 is an entirely separate statute. Agreed upon wages doesn't even appear in 226. It still has to be deduction from wages. From gross wages as defined in 226. Okay. So, 226. It's not the same problem. How is it the same problem? It's a different statute. It's a different statutory term. It's a different. They're talking about agreed upon wages in 222 as if that's the essence of the state law inquiry here. Everyone is accepting their fanciful description of the state law inquiry. I did, in fact. All right. So, is this a wages agreed upon? It's gross wages. It's still the same question. Does it include the nine cents or not? Correct. But, I mean. And you still have it either depends on the collective bargaining agreement or it doesn't. Well, no. Gross wages is something you determine by looking at the accounting. The nine cents an hour is not an abstraction. It existed. It was moved into this fund from the employee's wages. But that's the answer. That's the question, not the answer. Right. And that's the state money. In other words, was it moved from their wages or was the employer paying the nine cents? It was taken right from. That's the entire point. We can prove that. Okay. And that's what practice aside, or as in every single other case like this, in California courts that they've resolved it through analysis of the accounting. And in this case, it will also involve analysis. It's certainly being calculated on wages per hour. What difference does that make? The point is, is that you can see that they accounted for it. It doesn't have to be on site. They accounted for it as a wage deferral. Okay. Where have they accounted for it as a wage deferral? In their internal accounting. We can show that. I provided you with a long list of facts in our supplemental briefing of all the different factual points that we can make. And this is prior even to discovery. I mean, in Madsen, that's exactly the point that you make. This is a factual inquiry that goes far beyond the CBA. The CBA just provides the backdrop to it.  I mean, they're basically mischaracterizing what our claims are. They're saying that it's dependent on wages agreed upon. It's not dependent on that. The state law inquiry here is basically saying, did you properly disclose? Really, that's what the state law here is concerned with. That's the gravamen of the state law. Did you properly disclose or were you concealing something from these poor employees and basically secretly deducting this from them because they didn't want to pay attention to the fact that they were essentially increasing their union dues? What this $0.09 per hour was, for all intents and purposes, was a new component of their union dues. And that's the economic reality of it. You can't buy a million people. Okay, the $0.09 per hour was being paid to provide the unions portion of a 50-50 partnership between Kaiser and the coalition of Kaiser employee unions. They were each going to contribute 50% of the cost of this L&P trust, this L&P partnership. And the $0.09 per hour went to fund the union's half of that, right? Everyone agrees to that. That's what it says. And they should have simply listed it on their wage statements as a deduction, as either a subcomponent of union dues or as a different category of union dues right there on the back of the wage statement. What about this discussion that we were having before about the fact that your complaint as written seems to or could be read as requiring some conclusion about whether it's the national agreement or the local agreement that governs here and exactly what is the wage agreed upon overall and so on? It may be, for all the reasons you're saying, that, in fact, that is to tell you we'll litigate this case. We don't have to. But does the complaint nonetheless still set up three-on-one jurisdiction because it looks in the complaint as if you need to do this? I think that quoting the national agreement does not constitute an allegation. We did not depend on that. If you read the complaint fairly, you'll see that all we're saying is basically look at these three things. Look at the 3% across-the-board wage increase. Look at the 9-cent contribution diversion, whatever you want to call it, and look at the wage scales, which are the net of the 3% minus the 9 cents. Everyone agrees on those three things. But what are they? What are they under California law? Does it fly under California law to say that the 3% and the 9 cents were merely a thought process leading to the wage scales? You know, that's what they're trying to argue, right, that the national agreement was, in a sense, lower in the hierarchy than the local wage scales, that where the rubber really hits the road is in the local wage agreement, right, and that, in effect, you can kind of cast aside the national agreement as just being kind of a thought process or a thinking through of what the calculations are, right? It seems like you argued different things in the complaint and then on your brief on appeal, and the district court dismissed with leave to amend and said, I think, that it needed to interpret to resolve whether CPA included the national and local agreements or just the national. But you did not amend your complaint at that point. Your Honor, the district court asked us. Why not? I'm just trying to figure out why you didn't amend your complaint at that point. Because that's not what the district court asked. The district court asked us to re-allege our claims as federal claims. We can't re-allege nonexistent. Well, it seemed to make clear, the district court seemed to make clear the basis to what, you know, she was inclined, you know, to do and why, and you had opportunity there and you didn't take advantage. It seems like you didn't take advantage of it. I simply disagree. That's what she states. She states directly in her order that I have been given leave to amend the state claims as federal claims. I cannot. These are state minimum labor standards. Congress allocates the creation and the enforcement of minimum labor standards to the states. There are no corresponding analogous federal minimum labor standards. There's no possible way that I could have re-alleged these claims as federal claims. That's what she asked me to do. Okay. Thank you very much. It's an interesting case. It was, of course, very helpful. And the case of Estrada v. Kaiser Foundation Hospitals is submitted.
judges: Hawkins, Berzon, Murguia